Albert SLATER, Plaintiff,

v.

OPTICAL RADIATION
CORPORATION,
Defendant.

No. 88 C 9076.

United States District Court,
N.D. Illinois, E.D.

Jan. 31, 1991.

William S. Wigoda, Horvath & Wigoda, Chicago, Ill., for plaintiff.

Jane M. Simon, McDermott, Will & Emery, P.C., Brian C. Fetzer, Andrea Helene Kott, Johnson & Bell, Ltd., William V. Johnson, Johnson, Cusack & Bell, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

PLUNKETT, District Judge.

Plaintiff Albert Slater ("Slater") has filed an amended complaint ("complaint") against defendant Optical Radiation Corporation ("ORC") for injuries allegedly sustained as a result of the implantation of a device manufactured by ORC, known as the Stableflex anterior intraocular lens. Plaintiff's complaint sounds in negligence, strict liability, and breach of an implied warranty and seeks punitive damages. Before us today is (1) ORC's motion to dismiss all counts of the complaint on the ground that Slater's claims are preempted by federal law, and (2) ORC's motion for summary judgment[1] on Count Four, the count which seeks an award of punitive damages. For the reasons set out below, we grant ORC's motion to dismiss all counts of the complaint on the ground that plaintiff's claims are expressly preempted by federal law. We do not reach ORC's motion for summary judgment on Count Four.

---

1. ORC styles both of its motions as motions to dismiss. It is clear, however, that this second motion is really a motion for summary judgment in that it asks us to look at materials outside the pleadings to determine whether or not the facts of this case support an award of punitive damages. *See* Fed.R.Civ.P. 12(b) (last sentence).

*Facts*

Because we are only ruling on ORC's motion to dismiss, for today's purposes we assume all facts alleged in the complaint are true along with all reasonable inferences therefrom in the light most favorable to Slater, the plaintiff. *Powe v. City of Chicago*, 664 F.2d 639, 642 (7th Cir.1981). On July 19, 1984, Slater was admitted into the Hinsdale Hospital in Hinsdale, Illinois to have a cataract removed from his left eye and to have an implant placed therein. The surgery was performed by Dr. David Whitsel, who is now deceased. Dr. Whitsel performed the extracapsular cataract extraction and inserted an anterior chamber intraocular lens in Slater's left eye. The lens was a Stableflex Model # UV–11–H, a product manufactured, designed, marketed, promoted, sold and distributed by ORC. At the time of Slater's lens implant, the Stableflex Model # UV–11–H intraocular lens was part of a clinical investigation conducted pursuant to 21 C.F.R. § 813 *et seq.*[2] (*See* discussion, *infra* ).[3]

Over the next three years, Slater's left eye problems became worse. On January 8, 1986, Slater went to the Mayo Clinic in Rochester, Minnesota to receive treatment for his left eye. His left eye caused him great physical pain and had become infected. Slater was told that he was suffering from cestoid muscular edema. The doctors at the Mayo Clinic told him that there was no treatment available for his ailment, and told him to return in one year.

In January of 1987, Slater returned to the Mayo Clinic and was treated by two new doctors, Dr. R.R. Waller and Dr. Leo Maguire. Dr. Maguire recommended that the lens implant be removed because the pressure in Slater's left eye was dangerously low and because the tissue in his left eye was very soft. The operation to remove the lens implant was conducted on June 4, 1987.

On April 7, 1989, Slater filed the amended complaint in this action for injuries he sustained as a result of the insertion of the Stableflex intraocular lens manufactured by ORC. Count One alleges a cause of action for negligence. Specifically, Slater alleges that ORC was negligent in the performance or omission of seven acts:

1. Failed to engage in proper clinical testing in order to detect the effect of its Stableflex intraocular lens upon the human eye;

2. Distributed and sold its Stableflex intraocular lens in the market for implantation in the human eye knowing that it was not properly clinically tested and that it may cause damage to the human eye;

3. Failed to adequately warn the consuming public that its Stableflex intraocular lens had not been clinically tested for implantation in the human eye and that it could cause damage to the human eye;

4. Failed to inspect and discover that its Stableflex intraocular lens's design was defective and not fit for implantation in the human eye;

5. Failed to give adequate warnings as to the dangers of its Stableflex intraocular lens after its distribution and sale of the lens in July of 1984;

6. Knew or should have known that its Stableflex intraocular lens was designed improperly and was not fit for implantation in the human eye, and failed to warn the consuming public of its dangers; and

7. Was otherwise negligent in its responsibility as the manufacturer, designer and distributor of its Stableflex intraocular lens to take the necessary precautions that the lens was safe for implantation in the human eye.

(Compl. ¶¶ 17–19). Count Two alleges a cause of action for strict product liability.

---

**2.** This fact is not disputed by the parties. To the extent that this is a fact obtained from materials outside the pleadings, we treat ORC's motion as a motion for summary judgment pursuant to Fed.R.Civ.P. 56.

**3.** On June 25, 1984, prior to the implantation of the lens, Slater signed a consent form wherein he recognized that he was taking part in a clinical investigation monitored by the Food and Drug Administration. *See* footnote 2, *supra.*

Specifically, Slater alleges that ORC manufactured, sold, and placed in the stream of commerce an unreasonably dangerous and defective product which was unsafe at the time it left ORC's control. (Compl. ¶¶ 20–23). Count Three alleges a cause of action for breach of the implied warranty that the Stableflex lens was of merchantable quality. Ill.Rev.Stat. ch. 26, ¶¶ 2–314, 2–315. (Compl. ¶¶ 24–26). Count Four alleges a cause of action for wilful and wanton conduct of the above acts and omissions and seeks punitive damages therefor. (Compl. ¶¶ 27–32).

### Discussion

■ ORC moves to dismiss all counts of the complaint on the ground that Slater's claims are preempted by federal law. It is well established that under the Supremacy Clause of the United States Constitution, state laws that "interfere with, or are contrary to," federal law are invalid. U.S. Const., art. VI, cl. 2. Preemption can take one of three forms: (1) express preemption, where Congress passes a statute that by its express terms preempts state law; (2) implied preemption, where "federal legislation is 'sufficiently comprehensive to make reasonable the inference that Congress left no room for supplementary state regulation;'" *International Paper Co. v. Ouellette*, 479 U.S. 481, 107 S.Ct. 805, 811, 93 L.Ed.2d 883 (1987) (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947)); and (3) actual preemption, where Congress speaks neither expressly nor impliedly of preemption, but state law is nevertheless preempted to the extent it actually conflicts with a federal statute or rule. *International Paper*, 107 S.Ct. at 811. ORC argues that Slater's claims are both expressly and impliedly preempted.

We begin (and eventually end) with ORC's argument that Slater's claims are expressly preempted.[4] In 1976, Congress enacted the Medical Device Amendments ("MDA") to the Federal Food, Drug and Cosmetic Act of 1938 ("FDCA"), 21 U.S.C. § 301 *et seq.*, to protect the public health and safety and to bolster the Food and Drug Administration's regulatory powers. *See* 1976 U.S.Code Cong. & Admin.News (90 Stat.) 539. Congress delegated to the Food and Drug Administration ("FDA") the "authority to promulgate regulations for the efficient enforcement of this chapter...." 21 U.S.C. § 371(a). As part of the federal regulatory scheme, Congress enacted 21 U.S.C. § 360k(a)[5] which provides:

> [N]o State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement—
>
> (1) which is different from, or in addition to, any requirement applicable under [the FDCA] to the device, and
>
> (2) which relates to the safety and effectiveness of the device or to any other matter included in a requirement applicable to the device under [the FDCA].

■ Thereafter, the FDA promulgated regulations to enforce the FDCA. Specifically, the FDA promulgated 21 C.F.R. § 808.1(b) which states:

> Section 521(a) of the act [21 U.S.C. § 360k(a)] contains special provisions governing the regulation of devices by States and localities. That section proscribes a general rule that ... no State or political subdivision of a State may establish or continue in effect any requirement with respect to a medical device intended for human use having the force and effect of law (whether established by statute, ordinance, regulation, or *court decision*); which is different from, or in addition to, any requirement applicable to such device under any provision of the act and which relates to the safety and effectiveness of the device or to any other matter included in a require-

---

4. The following discussion of the relevant statutes, regulations and legislative history is borrowed in large part from the Fifth Circuit's well-reasoned opinion in *Moore v. Kimberly-*

*Clark Corp.*, 867 F.2d 243, 244–245 (5th Cir. 1989).

5. Section 521(a) of the FDCA, as added May 28, 1976, Pub.L. 94–295, § 2, 90 Stat. 574.

ment applicable to the device under the act.

(emphasis added). The FDA did not intend to preempt all state laws and regulations pertaining to "devices intended for human use," such as intraocular lenses.[6] This is made clear in 21 C.F.R. § 801.1(d) which provides that:

State or local requirements are preempted only when the Food and Drug Administration has established specific counterpart regulations or there are other specific requirements applicable to a particular device under the act...."

The result is that 21 U.S.C. § 360k(a), as interpreted by the FDA in 21 C.F.R. § 801.1, expressly preempts any state tort standard which would impose requirements on producers of medical devices which are "different from, or in addition to" the "specific counterpart regulations or ... other specific requirements" promulgated by the FDA.

■ In November of 1977, the FDA issued Investigational Device Exemption ("IDE") Regulations for intraocular lenses pursuant to the FDCA. These regulations are found at 21 C.F.R. § 813 *et seq.* They establish rules for the investigational use of intraocular lenses as permitted by 21 U.S.C. § 360j(g),[7] which allows the FDA to exempt devices from the otherwise stated provisions of the FDCA for investigational use to determine their safety and effectiveness. The intraocular lens IDE regulations are quite extensive, and set forth in great detail the procedures and conditions under which intraocular lens manufacturers can be granted exemptions from the safety and effectiveness requirements of the FDCA.

We find that the Investigational Device Exemption Regulations for intraocular lenses expressly preempts state law claims *based on safety or effectiveness* of a particular intraocular lens where that lens has been granted an investigational device ex-

emption by the FDA. The FDA made it clear that state regulations and requirements, including those imposed through court decisions imposing tort liability, are expressly preempted when the FDA "has established specific counterpart regulations or there are other specific requirements applicable to a particular device under the" FDCA. 21 C.F.R. § 801.1(d). In the case of intraocular lenses, the FDA has established such a specific requirement applicable to the lenses—they can be exempt from the otherwise applicable requirements of the FDCA for safety and effectiveness.

It is undisputed that at the time of the implant of the ORC Stableflex lens into Slater's left eye, the Stableflex lens was the subject of a clinical investigation conducted pursuant to 21 C.F.R. § 813 *et seq.* Slater's claims in this case are all based upon the safety or effectiveness of the Stableflex lens. Count One alleges that ORC committed seven negligent acts, all of which relate to clinical testing (the subject of the IDE) or the safety or effectiveness of the Stableflex lens. Count Two alleges strict product liability based on the premise that the Stableflex lens was dangerous and defective—a claim based on the safety or effectiveness of the lens. Count Three alleges a breach of the implied warranty that the lens was of merchantable quality— again, a claim based on the safety or effectiveness of the lens. Finally, Count Four alleges that ORC committed the acts alleged in Counts One through Three wilfully and wantonly, and seeks punitive damages. To the extent Count Four is derivative of Counts One through Three, its is also based on the safety or effectiveness of the lens. The imposition of state tort requirements in this case would clearly be "different from, or in addition to" both the terms of the FDCA and the requirements of the IDE regulations promulgated by the FDA for safety or effectiveness.[8] We therefore

---

**6.** Intraocular lenses are classified as Class III (Premarket approval) medical devises under the terms of the FDCA. *See* 21 U.S.C. § 360c, 21 C.F.R. § 813 *et seq.*

**7.** Section 520(g) of the FDCA.

**8.** Our ruling today is consistent with the court's ruling in *Mitchell v. IOLAB Corp.,* 700 F.Supp. 877, 878–79 (E.D.La.1988), the only reported case applying the preemption laws to intraocular lenses under the FDCA and FDA regulations. That court described the applicable statutory and regulatory background of intraocular lens-

374

grant ORC's motion to dismiss on the ground that Slater's claims are expressly preempted by federal law.[9] Because we find Slater's claims to be expressly preempted, we do not reach the issues of implied or actual preemption.

### Conclusion

For the reasons set out above, we grant defendant Optical Radiation Corporation's motion to dismiss the amended complaint on the ground that plaintiff Albert Slater's state law claims are expressly preempted by federal law.

es. However, that court concluded that because the requirements for informed consent under Louisiana law are not "different from, or in addition to" the requirements under the FDCA and FDA regulations, the plaintiff's state law tort claims were not preempted. While the opinion in *Mitchell* is not clear, it appears that the state law tort claims were based on the requirements for informed consent under Louisiana law. The instant case is quite different in that Slater's state law tort claims are based directly on the safety or effectiveness of the Stableflex lenses.

9. Both parties argue heavily from a series of cases applying the preemption doctrine to state law regulation of tampons. *See e.g. Moore v. Kimberly-Clark Corp.*, 867 F.2d 243 (5th Cir. 1989); *Edmondson v. International Playtex, Inc.*, 678 F.Supp. 1571 (N.D.Ga.1987); *LaVetter v. International Playtex, Inc.*, 706 F.Supp. 722 (D.Ariz.1988). We find the analysis of those cases to be inapplicable here. There is no equivalent of the Investigational Device Exemption Regulations of intraocular lenses for tampons. The Medical Device Amendments to the FDCA expressly preempts state tort claims based on tampon labeling and warning, but not design. The intraocular lens IDE regulations expressly preempt all aspects of intraocular lens safety and effectiveness.