**D. Duane HUNSAKER and Louise V. Hunsaker, his wife, Plaintiffs,**

v.

**SURGIDEV CORPORATION, Defendant.**

Civ. A. No. 1:CV–90–0919.

United States District Court, M.D. Pennsylvania.

Dec. 14, 1992.

Douglas H. Gent, Patricia R. Marcus, Stock and Leader, Hanover, PA, Raymond L. Hovis, Stock & Leader, York, PA, Susan M. Weber, Pennsylvania Medical Society, Harrisburg, PA, for plaintiffs.

Patricia A. Butler, Val Ellsworth Winter, Barley, Snyder, Senft & Cohen, York, PA, for defendant.

## MEMORANDUM

RAMBO, Chief Judge.

Before the court is Defendant's motion for summary judgment. The issue has been fully briefed and is now ripe for consideration.

*Background*

The following facts are undisputed by the parties; any contested points will be noted by the court: In June of 1980, plaintiff Duane Hunsaker began treatment with Dr. Byron Chong for cataracts. On August 23, 1982, as part of this treatment, Dr. Chong performed an intracapsular cataract extraction[1] on Mr. Hunsaker's left eye, surgery which entailed removing his natural eye lens which was clouded over by the cataract. Dr. Chong then implanted an intraocular lens ("IOL") in front of Mr. Hunsaker's natural iris. This lens, a Surgidev Style 10, was designed, manufactured and sold by Defendant. On December 20, 1983, Mr. Hunsaker underwent additional surgery, this time extracapsular cataract extraction and had an IOL implanted in his right eye. Again, the lens was a Surgidev Style 10 manufactured by Defendant.

Defendant asserts that both surgeries were part of a clinical investigation approved and monitored by the Food and Drug Administration ("FDA") and that plaintiff Duane Hunsaker consented to participating in this study. Defendant's supporting brief at 2.

Plaintiffs allege that these lenses were defective, resulting in severe and permanent disabling injuries to Mr. Hunsaker—total and irreparable vision loss in his right eye, and a substantial loss of vision in his left eye which required a corneal transplant. They also allege that Defendant knew that such defects existed prior to the implant of its IOL in Mr. Hunsaker's eye.

Plaintiffs brought the captioned action on negligence and strict liability theories; a claim for punitive damages was also included. Defendant asserts that all the claims are preempted by federal law and therefore summary judgment should be entered against Plaintiffs.

*Discussion*

I. Summary Judgment

■ The court will consider this motion under the accepted standards for the award of summary judgment under Federal Rule of Civil Procedure 56. The Third Circuit has recently summarized those standards in a concise and helpful way:

> Summary judgment may be entered if "the pleadings, deposition[s], answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, [248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202] ... (1986); *Equimark Comm. Finance Co. v. C.I.T. Financial Serv. Corp.,* 812 F.2d 141, 144 (3d Cir.1987). If the evidence is "merely colorable" or "not significantly probative" summary judgment may be granted. *Anderson,* [477 U.S. at 249–51] 106 S.Ct. at 2511; *Equimark,* 812 F.2d at 144. Where the record, taken as a whole, could not "lead a rational trier of fact to find for the

---

1. Intracapsular extraction involves removal of the lens and the capsule around the eye while the extracapsular method preserves the patient's capsule while removing the lens. Plaintiffs' Response brief at 1–2; Defendant's reply brief at 3 n. 1, 2.

nonmoving party, summary judgment is proper." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574 [106 S.Ct. 1348, 89 L.Ed.2d 538] ... (1986).

*Hankins v. Temple Univ.*, 829 F.2d 437, 440 (3d Cir.1987). The parties' burdens in summary judgment may be described in the following way: Once the moving party has shown an absence of evidence to support the claims of the nonmoving party, the nonmoving party must do more than simply sit back and rest on the allegations of the complaint. She must "go beyond the pleadings and her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' and designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). If the nonmovant bears the burden of persuasion at trial, "the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the nonmovant's burden at trial." *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893, 896 (3d Cir.1987).

## II. Preemption

### A. Introduction

The Supremacy Clause of the United States Constitution provides that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof ... shall be the supreme Law of the Land ... any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. This clause has been interpreted as providing for federal preemption of state law in three situations:

(1) Congress may pass a statute that by its *express* terms preempts a state law,

(2) Congress, though not expressly stating, may *imply* that it is preempting state law by occupation of an entire field of regulation, so that no room is left for supplementary state regulation,

(3) Congress may speak neither expressly nor impliedly of preemption, nonetheless state law is preempted to the extent it *actually* conflicts with federal law; such a conflict occurs when

(a) compliance with both state and federal law is impossible or,

(b) when state law stands as an impediment to a federal purpose.

*Abbot v. American Cyanamid Co.*, 844 F.2d 1108, 1111 (4th Cir.), *cert. denied*, 488 U.S. 908, 109 S.Ct. 260, 102 L.Ed.2d 248 (1988) (citing *Michigan Canners and Freezers Ass'n v. Agric. Mktg. and Bargaining Bd.*, 467 U.S. 461, 469, 104 S.Ct. 2518, 2523, 81 L.Ed.2d 399 (1984)) (emphasis added). *See also Cipollone v. Liggett Group, Inc.*, 505 U.S. ——, ——, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407, 423 (1992).

■ Analysis of preemption issues must "start with the assumption that the historic police powers of the States [are] not to be superseded by [federal law] unless that [is] the clear and manifest purpose of Congress." *Cipollone*, 505 U.S. at ——, 112 S.Ct. at 2617, 120 L.Ed.2d at 422. (citing *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947)). There is a strong presumption against preemption when "Congress does not expressly state its intent," *Abbot*, 844 F.2d at 1112 (citing *Maryland v. Louisiana*, 451 U.S. 725, 101 S.Ct. 2114, 68 L.Ed.2d 576 (1981)); when regulations pertain to health or safety issues, *Abbot*, 844 F.2d at 1112 (citing *Hillsborough County v. Automated Med. Labs*, 471 U.S. 707, 715, 105 S.Ct. 2371, 2376, 85 L.Ed.2d 714); when there is no federal remedy for the plaintiff's injury, *Abbot*, 844 F.2d at 1112 (citing *Silkwood v. Kerr–McGee, Corp.*, 464 U.S. 238, 251, 104 S.Ct. 615, 623, 78 L.Ed.2d 443 (1984), *reh'g denied*, 465 U.S. 1074, 104 S.Ct. 1430, 79 L.Ed.2d 754 (1984), *cert. denied*, 476 U.S. 1104, 106 S.Ct. 1947, 90 L.Ed.2d 356 (1986)); or in ambiguous cases. *Cipollone*, 505 U.S. at ——, 112 S.Ct. at 2625, 120 L.Ed.2d at 432 (Blackmun, J., concurring). Moreover, the comprehensive nature of regulations is less likely than the comprehensive nature of a statute from which to infer federal preemption, since regulations must ordinarily be comprehensive and detailed in nature. *Abbot*, 844 F.2d at 1112 (citing *Hillsborough*, 471 U.S. at 718, 105 S.Ct. at 2377–78).

B. Relevant Statutory and Regulatory Law

The Medical Device Amendments ("MDA") were added to the Federal Food, Drug, and Cosmetic Act ("FDCA") in 1976 and are codified at 21 U.S.C. § 360c *et seq.* They were enacted "to assure that medical devices ... meet the requirements of safety and effectiveness before they are put in widespread use throughout the United States." S.Rep. No. 33, 94th Cong., 1st Sess. 2 (1975), *reprinted in* 1976 U.S.C.C.A.N. 1070, 1071.

■ These amendments both set forth requirements regarding the safety of medical devices and limit the power of states to regulate such devices. 21 U.S.C. § 360k(a), provides:

> [N]o state or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any *requirement*—
>
> (1) *which is different from, or in addition to, any requirement applicable under this Act to the device,* and
>
> (2) which relates to the safety and effectiveness of the device or to any other matter included in a requirement applicable to the device under this Act.

21 U.S.C. § 360k(a) (emphasis added). This provision is interpreted and implemented by regulations:

> [N]o state or political subdivision of a state may establish or continue in effect any *requirement* with respect to a medical device intended for human use having the force and effect of law (whether established by statute, ordinance, regulation or court decision), which *is different from, or in addition to,* any requirement applicable to such device under any provision of the act and which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under the act.

21 C.F.R. § 808.1(b) (emphasis added). However, the scope of preemption is narrowed in a later subsection of the regulations which limit preemption to when the FDA has established:

> specific counterpart regulations or ... other specific requirements applicable to a particular device under the act, thereby making any existing divergent State or local requirements applicable to the device different from, or in addition to, the specific Food and Drug Administration requirements.

21 C.F.R. § 808.1(d).

Pursuant to 21 U.S.C. § 371(a), which permits the FDA to promulgate regulations to implement the FDCA and MDA, in 1977 the FDA issued 21 C.F.R. § 813.1 *et seq.*, regulations permitting an Investigational Device Exemption for Intraocular Lenses ("IDE"). The IDE exempts approved IOLs from the safety and effectiveness requirements of the FDCA and the MDA to encourage investigational use of these medical devices. 21 C.F.R. §§ 813.1, 813.5.

In accordance with these regulations, the FDA granted Defendant an IDE for the Surgidev Style 10 lens. This lens was subsequently used in a clinical investigation during which two were implanted in Mr. Hunsaker's eyes. The question before the court is whether the tort standards upon which Plaintiffs rely are preempted by the federal regulatory and statutory law governing IOLs.

Three questions are presented by the current action: (1) do the Medical Device Amendments preempt state tort causes of action? If not, then summary judgment must be denied. If yes, (2) are all state tort claims preempted? If not, then (3) are Plaintiffs' specific claims preempted?

C. Are state tort remedies expressly preempted by the Medical Device Acts?

The court begins—and ends—with an analysis of whether Plaintiffs' claims are *expressly* preempted.

Case law differs in interpretation of 21 U.S.C. § 360k(a), which bars state law adding or providing a different requirement to that imposed by federal law. Some cases have concluded that "requirements" do not include state common law.

For example, the district court in *Callan v. G.D. Searle & Co.,* 709 F.Supp. 662, 668

(D.Md.1989) explained, *in dicta,*[2] that § 360k should not be read to preempt state tort law. The court reasoned:

> The common law is never mentioned [in § 360k], and there is no provision of a federal remedy for those wrongfully injured by the devices.... In addition, if the term 'requirement' were interpreted so as to include tort law, the exemption procedures would be rendered absurd; is the State supposed to petition the Secretary of Health and Human Services after every verdict in favor of an IUD tort plaintiff?
>
> The legislative history of § 360k further supports the view that Congress did not intend to preempt state tort law. In a report by the House Committee on Interstate and Foreign Commerce, this 'supremacy' provision is specifically discussed and establishes that Congress intended the term requirement to refer to legislative and administrative programs governing the sale and distribution of devices, not to state common law. House Report No. 94–853, 94th Cong.2d Session, pp. 45–46.... The House Report demonstrates a clear concern with statutory programs administered by States and localities and never even hints to inclusion of state common law.
>
> Case law supports this interpretation of § 360k and the term 'requirement.' In *Ferebee v. Chevron Chemical Co.,* 736 F.2d 1529 (D.C.Cir.), *cert. denied,* 469 U.S. 1062 [105 S.Ct. 545, 83 L.Ed.2d 432] ... (1984), the Court held that the term 'requirement' in a similar provision in the Federal Insecticide, Fungicide, and Rodenticide Act ... did not preempt state tort law.... In *Garrett v. Ford Motor Co.,* 684 F.Supp. 407, 409–10 (D.Md.1987), the Court found that [an analogous] provision in the National Traffic and Motor Vehicle Act ... did not preempt a common law claim.
>
> To the extent that the FDA's inclusion of the words 'court decision' in its implementing regulations suggest otherwise, the FDA regulation contradicts Congressional intent and is not based on a permissible construction of the statute. *See Nat'l La-

bor Relations Board v. United Food and Commercial Workers Union, Local 23, AFL–CIO,* 484 U.S. 112 [108 S.Ct. 413, 98 L.Ed.2d 429] ... (1987); *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–43 [104 S.Ct. 2778, 2781, 81 L.Ed.2d 694] (1984).

*Callan,* 709 F.Supp. at 667–68.

*Callan* s reasoning is unpersuasive to this court. The medical device—an IUD—in *Callan* was only subject to the Medical Device Amendments, and not to the more comprehensive IDE to which the IOL in this case is subject. There is a fundamental difference between a device approved by the FDA for manufacture and sale—that is, approved under the relevant regulations of the FDCA and MDA—and a device approved sufficiently safe and effective for investigation—that is, exempted from the FDCA and MDA under the IDE. In the former situation, there may not be an inherent conflict between federal law, providing a minimum floor of requirements, and state causes of actions, which may impose a higher duty on manufacturers of medical devices. However, in the latter situation, there is an essential incompatibility between federal law and state law since federal law establishes *both* a floor—the minimum amount of evidence required to show that a device is sufficiently safe for investigational use—*and* a ceiling—the safety standard which, if achieved by a particular device, would demonstrate that the device need not be investigated at all since it is already demonstrated to be safe and effective.

Only two cases have confronted the specific issue of the preemptive effect of the IDE, MDA, and FDCA on state tort causes of action regarding IOLs—*Mitchell v. Iolab Corp.,* 700 F.Supp. 877 (E.D.La.1988) and *Slater v. Optical Radiation Corp.,* 756 F.Supp. 370 (N.D.Ill.1991), *aff'd,* 961 F.2d 1330 (7th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 327, 121 L.Ed.2d 246 (1992). *Mitchell,* like *Callan,* concluded that state tort law is not preempted by federal law. The district court in that case determined that the plaintiff's state negligent action *was*

2. The court had already concluded that the MDA did not apply to the medical device at issue, but then went on to discuss the preemptive effect of the MDA *assuming arguendo* that it did apply.

*not* preempted even though the IOL in question was implanted during an investigation subject to an IDE. *Mitchell* based its conclusion on a strained reading of 21 C.F.R. § 50.20 requiring informed consent and preventing a patient from waiving any legal rights. Specifically, the regulation provides:

No informed consent, whether oral or written, may include any exculpatory language through which the subject or the representative is made to waive or appear to waive any of the subjects, legal rights, or releases or appear to release the investigator, the sponsor, the institution, or its agents from liability for negligence.

21 C.F.R. § 50.20. The *Mitchell* court explained that "[t]his section is incorporated by reference into 21 C.F.R. § 813.1 *et seq.*" and thus "establishes that state tort law is neither '... different from, or in addition to, any requirement applicable under this Act to the device ... which relates to the safety and effectiveness of the device....' 21 U.S.C. § 360k(a)." *Mitchell,* 700 F.Supp. at 879.

*Mitchell* ignored 21 C.F.R. § 808.1(b), a regulatory section interpreting 21 U.S.C. § 360k and which specifically provides for preemption regardless of whether the state is acting "by statute, ordinance, regulation, or *court decision.*" 21 C.F.R. § 808.1(b) (emphasis added).[3]

Plaintiffs and *Mitchell* reason that the consent regulation effectively trumps the preemption language of other regulations and the statute. However, a primary rule of statutory construction is that all laws are presumed to be consistent with each other and that existing laws must be harmonized by courts whenever possible. 73 Am.Jur.2d *Statutes* § 254 at 425. It is possible to harmonize the two arguably conflicting regulations here. The consent regulation should be read to prevent patients from waiving legal rights *which are not preempted under federal law.* That is, those common law rights which are retained by a patient and not preempted by the federal scheme may not be waived by the patient.

Moreover, numerous cases *have* deemed state tort decisions to be included among that "state law" which may be preempted by the MDA. *See Lindquist v. Tambrands, Inc.,* 721 F.Supp. 1058, 1062 (D.Minn.1989) (footnotes omitted) ("of the eighteen courts that have considered [whether a state's general tort law standards are preempted by the MDA], seventeen[4] have ... reached the conclusion that a jury verdict in a tort suit under state law is a requirement for the purposes of section 521(a) and therefore preempted.")

Plaintiffs also maintain that "requirements" should be especially narrowly read in

---

**3.** Plaintiffs cite *Taylor v. Ford Motor Corp.,* 875 F.2d 816 (11th Cir.1989), *cert. denied,* 494 U.S. 1065, 110 S.Ct. 1781, 108 L.Ed.2d 783 (1989) for the proposition that statutory law *must* specifically refer to "common law" to preempt it. This argument is unpersuasive. First, *Taylor* does not hold that the absence of these words completely precludes a finding of preemption, just that it "counsels against a finding of express preemption." Second, the inclusion of the words "court decision" in 21 U.S.C. § 360k are analogous to the words "common law." Thus, assuming the Eleventh Circuit's "rule" should be heeded by this court, the statutory language favors a finding of federal preemption over state common law. *Taylor v. Ford Motor Corp.,* 875 F.2d at 824.

**4.** The seventeen cases cited are: *Moore v. Kimberly–Clark Corp.,* 867 F.2d 243 (5th Cir.1989), *aff'g in relevant part,* 676 F.Supp. 731 (W.D.La. 1987); *LaVetter v. International Playtex, Inc.,* 706 F.Supp. 722 (D.Ariz.1988); *Edmondson v. International Playtex, Inc.,* 678 F.Supp. 1571 (N.D.Ga. 1987); *Rinehart v. International Playtex, Inc.,* 688 F.Supp. 475 (S.D.Ind.1988); *Jones v. Tambrands, Inc.,* No. CO870102 (N.D.Iowa, Dec. 5, 1988);

*Stucker v. International Playtex, Inc.,* No. C–87–0440–L(B) (W.D.Ky. Feb. 26, 1988) (appeal dismissed for lack of appellate jurisdiction, Jan. 24, 1989); *Needham v. International Playtex, Inc.,* No. 87–152 (E.D.Ky. Oct. 25, 1988); *Cornelison v. Tambrands, Inc.,* 710 F.Supp. 706 (D.Minn. 1989); *Meyer v. International Playtex, Inc.,* 724 F.Supp. 288 (D.N.J.1988); *Briggs v. International Playtex, Inc.,* No. 86–C–540–E (N.D.Ok. Apr. 7, 1988); *Gilbert v. Kimberly–Clark Corp.,* No. 87–C–470–E (N.D.Ok. Nov. 4, 1988); *Stewart v. International Playtex, Inc.,* 672 F.Supp. 907 (D.S.C. 1987); *Remer v. Tampax, Inc.,* No. 578755 (San Diego County Superior Court, California, May 10, 1989); *Aase v. Tambrands, Inc.,* No. 68108 (Kootenai County District Court, Idaho, Aug. 24, 1989); *Craig v. Kimberly–Clark Corp.,* No. 86–2–14780–2 (Kings County Superior Court, Washington, Sept. 15, 1988); *Berger v. Johnson & Johnson Products, Inc.,* No. 86–2–01249–3 (Yakima County Superior Court, Washington, Mar. 14, 1989). The one case to decide differently was *Musatko v. International Playtex, Inc.,* No. 85–C–1540, slip op. (E.D.Wis. May 14, 1987), the first case to decide the particular question. *See Lindquist,* 721 F.Supp. at 1062 n. 2.

light of the fact that, without state tort law, no remedies will exist for Plaintiff. Plaintiffs ignore the fact that, as explained below, tort remedies do survive preemption if they do not conflict with federal law. Moreover, case law has established that the lack of alternative avenues of relief does not *preclude* a finding of federal preemption (although it may provide a presumption against such a finding). *See Duke Power Co. v. Carolina Envtl. Study Group, Inc.*, 438 U.S. 59, 88, 98 S.Ct. 2620, 2638, 57 L.Ed.2d 595 (1978) (no Constitutional requirement that federal law, preempting state causes of action, "either duplicate the recovery at common law or provide a reasonable substitute remedy.")

■ Tort remedies *may* have regulatory consequences and thereby impose additional requirements on those parties attempting to comply with federal regulations. *See San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 247, 79 S.Ct. 773, 780, 3 L.Ed.2d 775 (1959) ("[state] regulation can be as effectively exerted through an award of damages as through some form of preventative relief. The obligation to pay compensation can be, indeed is designed to be, a potent method of governing conduct and controlling policy."). A jury's finding of liability effectively creates a new standard or duty which defendants must follow to shield themselves from future liability. It is absurd to contend that this fear of liability will not induce manufacturers to conform their conduct to jury-set standards or that these standards do not, in reality, constitute new requirements which defendants must heed.

D. Are all state tort actions so preempted?

■ Although some tort standards relating to IOLs *may* be federally preempted, not all causes of action are so preempted. Those standards which do not add or impose different requirements from those specified by federal law are not preempted. State causes of action survive federal preemption if there is no specific federal counterpart. Section 808.1(d) of the regulations provides that:

state or local requirements are preempted only *when the Food and Drug Administration has established specific counterpart regulations* or there are other specific requirements applicable to a particular device under the act, thereby making any existing divergent state or local requirements applicable to the device different from, or in addition to, the specific Food and Drug Administration requirements.

21 C.F.R. § 808.1(d) (emphasis added). Thus, state agencies do have a role in regulating medical devices, as long as their regulations do not add to or diverge from those requirements set in out federal statutory or regulatory law.[5]

■ Therefore, this court concludes that 21 C.F.R. § 808.1(d), when read in conjunction with 21 C.F.R. § 801.1(b), and 21 U.S.C. § 360k(a), provides for federal preemption of state law (or cause of action) due to the convergence of FDCA, MDA, and IDE. The appropriate test is the following: (1) do the applicable regulations or statutes set forth a requirement pertaining to this area; (2) does the state law create a requirement additional or different from this federal requirement? *See Mitchell*, 700 F.Supp. at 878 (utilizing two pronged analysis in question about state cause of action for IOL). Under such an analysis, existing case law has established that certain state causes of action are not preempted by federal law. For example, IOL patients retain the right to litigate state claims for lack of informed consent to the implant procedure, *Mitchell*, 700 F.Supp. at 878, for negligent implant or removal of the lens, or for contamination of the lens by bacteria or fungi. *Slater v. Optical Radiation Corp.*, 756 F.Supp. at 373 and 961 F.2d at 1334. However, Plaintiffs' claims do not include any such clear-cut exceptions to exemptions.

E. Are Plaintiffs' specific claims preempted?

    1. *Plaintiffs' Claims*

Plaintiffs allege that Defendant was negligent in:

---

**5.** State agencies may also play a role in regulating medical devices if the FDA approves their regulatory plan. See 21 C.F.R. §§ 808.20–808.101.

(1) failing to exercise due care in designing and manufacturing the lenses;

(2) failing to exercise due care in conducting pre-market approval testing and analysis of the lenses;

(3) negligently making and selling the lenses when it knew, or should have known, that the design, testing and manufacture of them was defective;

(4) carelessly conducting quality control of the lenses;

(5) failing to remedy defects in the lenses after analysis showed that the lens design was defective; and

(6) failing to exercise due and proper care under the circumstances;

Complaint at ¶ 12. Plaintiffs' strict liability claim is based on allegations that Defendant poorly designed and manufactured the lenses, lacked adequate pre-market testing and analysis, lacked warnings regarding the danger of the lenses, lacked quality control analysis and testing, and lacked correction of known or suspected defects. Complaint at ¶ 18.

### 2. *Safety and Effectiveness Claims*

Several of Plaintiffs' claims relate to allegations that Defendant's IOL was defective and unsafe. Complaint at ¶¶ 12, 18.

The court in *Slater v. Optical Radiation Corp.*, 756 F.Supp. 370 (N.D.Ill.1991) was confronted with this identical issue. The *Slater* plaintiff also sued the manufacturer of an IOL for negligent design and manufacture of the device and strict liability for placing a defective product into the stream of commerce. *Slater*, 756 F.Supp. at 371–72. The district court determined that all of the *Slater* plaintiff's claims relating to the safety and effectiveness of the IOL were federally preempted. *Slater*, 756 F.Supp. at 371. Utilizing the two pronged analysis, the court first found that the FDA had established specific regulations pertaining to the design and manufacture of IOLs. The IDE regulations for IOLs, found at 21 C.F.R. § 813 *et seq.* and described above, provide an exten-

sive framework governing the FDA's decision to grant exemptions to particular IOL manufacturers from safety and effectiveness requirements found elsewhere in the FDCA. The IDE regulations require a detailed application and plan for the clinical investigation, 21 C.F.R. §§ 813.20–813.25, approval of the application by an institutional review committee as well as the FDA, §§ 813.20, 813.30–813.42, and committee monitoring of the investigation, § 813.65. *See also Surgidev Corp. v. Eye Technology, Inc.*, 648 F.Supp. 661, 684 (D.Minn.1986), *aff'd*, 828 F.2d 452 (8th Cir.1987).[6] With regard to Plaintiffs' claim that Defendant's quality control of the lenses was careless, 21 C.F.R. § 813.30(c)(5) permits the Commissioner to disapprove an IDE application if he or she finds that "[t]he methods, facilities, and controls used for the manufacturing, processing, packing, storage, or implantation of the lens do not assure adequately the safety and effectiveness of the lens."

■ Second, the *Slater* court concluded that the standards implicit in the state tort actions would be "different from or in addition to" those requirements of both the FDCA and the IDE regulations. *Slater*, 756 F.Supp. at 373. This court agrees with the reasoning put forth by the two *Slater* courts. By challenging Defendant's design and manufacturing of the IOLs implanted in Mr. Hunsaker, Plaintiffs are essentially disputing the propriety of FDA's grant of the IDE to Defendant. As *Slater* reasoned, the exemption for experimental medical devices permits companies to test devices which have not yet proven to be safely and effectively designed; if they were so proven, they would not be experimental. The FDA only · approves IDEs for IOLs upon a determination that the device is *sufficiently* safe and effective for investigative use on human beings. *Slater*, 961 F.2d at 1333. A jury determination that the device is not sufficiently safe and effective would not only be contrary to the experimental purposes of the exemption, but, more important, would directly conflict with the

---

6. "The preclinical filing sets forth in detail the manufacturing process utilized, the investigation that the manufacturer anticipates conducting with human subjects, a microbiological study of the materials used in manufacture of the lens, a toxilogical study of the materials, and results of tests of the lens with a tumor inducing device."

FDA's contrasting judgment. Therefore, state tort law invoked to challenge the safety or effectiveness of a IOL which is part of an FDA investigation is federally preempted.

The fact that the FDA has not provided *exact* design and manufacturing standards for IOLs does not preclude a determination that federal law preempts a state cause of action resting on negligent design theory. As the *Slater* court explained:

[This] argument assumes that the only federal requirement that might relate to the safety or effectiveness of the design of a medical device would be an actual specification of that design. The preemption provision does not say this, and so cramped an interpretation would cripple the exemption for investigational devices. The FDA can hardly be expected to specify the safe and effective design of a device when is still experimental. If there were a known safe and effective design, the device would no longer be experimental. The point of the experiment is to find out whether it is safe and effective ... In the experimental phase the appropriate regulations of safety and effectiveness are procedural rather than substantive ones. They do not specify the safe and effective design; they specify the procedures for determining whether the experimental design is safe and effective. These are requirements relating to safety and effectiveness and they can therefore have preemptive effect.

*Slater*, 961 F.2d at 1333 (citations omitted).

Cases which Plaintiffs cite do not persuade this court that the FDA and IDE regulations should not preempt state causes of action sounding in negligent design or strict liability for a defective design. In *Moore v. Kimberly–Clark Corp.*, 867 F.2d 243, 246 (5th Cir. 1989), to which Plaintiffs refer, the court determined that a state claim for negligent design of tampons was *not* federally preempted. However, the court first determined that the FDA had not issued regulations governing the design or construction of tampons, so that area was not preempted by federal law. *Id.* at 246. In contrast, for IOLs, regulated under the IDE, a section completely inapplicable to tampons, federal

law does grant authority to the FDA to determine which devices are sufficiently safe and effective to justify an investigatory exemption. *See Slater*, 756 F.Supp. at 374, n. 9. Thus, for IOLs but not for tampons, there are specific federal regulations impinging on the design freedom of manufacturers. For tampons, but not IOLs, the first prong of preemption analysis ("is there a federal counterpart?") fails. *Moore* is therefore not analogous to the captioned case.

Plaintiffs' claims which specifically allege, under negligence and strict liability theories, that the IOLs implanted in Mr. Hunsaker were not safe or effective, are preempted. Consequently, summary judgment will be granted on these negligence and strict liability claims: Plaintiffs' assertions that Defendant failed to exercise due care in designing and manufacturing the lenses, failed to exercise due care in conducting pre-market approval testing and analysis of the lenses, carelessly conducted quality control of the lenses, and failed to exercise due and proper care under the circumstances will be dismissed for lack of subject matter jurisdiction. *See* Complaint at ¶¶ 8, 12.

### 3. *Knowledge of Defect*

Plaintiffs allege that Defendant knew a few months before the surgery at issue that the Surgidev Style 10 IOL was defective. Plaintiffs' response brief at 2. Plaintiffs further contend that Defendant could have notified investigators and patients and alerted them to the dangers discovered in their IOL. Plaintiffs also maintain that Defendant, concerned about the safety of the procedure and lens, could have withdrawn its device or withheld distribution of it until convinced of the safety of the device.

The first question in analyzing whether this claim is preempted is to determine whether specific federal law exists establishing a duty to notify IOL implantees of defective devices, or to recall defective IOLs from the market. These duties were analyzed by the district court in *National Women's Health Network, Inc. v. A.H. Robins Co.*, 545 F.Supp. 1177, 1180 (D.Mass.1982). In that case, the plaintiff sought court recognition of a private right of action so as to obtain recall of the Dalkon Shield intrauterine device

**754**

("IUD"). The court, denying Plaintiff's request, explained:

> [The Medical Device] amendment expressly established the remedies advocated by plaintiffs in this case—notification and recall—and vested the power to seek these remedies *in the Secretary.* 21 U.S.C. § 360h. In its report on the bill, the Senate Labor and Public Welfare Committee indicated that 'the Secretary should have considerable discretion in determining whether or not users of devices must be notified of defects in any given case.' 1976 USCCAN 1086. Such discretion, of course, would be eliminated by the private right of action sought by plaintiffs. As a result, the major advantages of enforcement through the Secretary would be lost, including expertise, ability to solicit comment from appropriate sources, direct representation of the public interest, an a unitary enforcement policy.

*Id.* at 1180 (emphasis in original).[7]

■ Federal law does not govern only the initial determination that a product is either sufficiently safe or not, but also governs the entirety of the investigative process. Section 813.35 permits the FDA commissioner to withdraw an exemption if, among other reasons, "[t]here is reason to believe that the investigational device may be unsafe or ineffective when used for the purposes or in the manner for which it is investigated." 21

C.F.R. § 813.35(a)(3). This court thus agrees with the reasoning set forth in *National Women's Health Network, Inc.* that the MDA specifically establishes a notification and recall requirement.

■ The second prong of the preemption analysis requires a determination of whether the state causes of action for failure to warn or to recall add or impose different requirements to those established by federal law. Plaintiffs seek to impose an affirmative duty upon manufacturers of IOLs to notify patients of any problems which may accompany implant of the ocular devices. However, federal regulations place a duty on manufactures to inform the *FDA* of problems, and a duty on the *FDA* to recall or notify patients upon discovery of a defect. Plaintiffs' proposed duties would add to this scheme by requiring the manufacturer to notify patients of potential defects or to pull possibly deficient devices from the market. Therefore, a state action for failure to notify or recall would impose an additional requirement from those prescribed by federal law; such a cause of action is preempted. Consequently, summary judgment will be granted on these two claims: negligently making and selling the lenses when it knew, or should have known, that the design, testing and manufacture of them was defective and failing to

---

7. 21 U.S.C. § 360h, to which the quote refers provides:

> (a) Notification. If the Secretary determines that—
> (1) a device intended for human use which is introduced or delivered for introduction into interstate commerce for commercial distribution presents an unreasonable risk of substantial harm to the public health, and
> (2) notification under this subsection is necessary to eliminate the unreasonable risk of such harm and no more practicable means is available under the provisions of this Act (other than this section) to eliminate such risk,
>
> the Secretary may issue such order as may be necessary to assure that adequate notification is provided in an appropriate form, by the persons and means best suited under the circumstances involved, to all health professionals who prescribed or use the device and to any other person (including manufacturers, importers, distributors, retailers, and device users) who should properly receive such notifi-

cation in order to eliminate such risk. An order under this subsection shall require that the individuals subject to the risk with respect to which the order is to be issued be included in the persons to be notified of the risk unless the Secretary determines that notice to such individuals would present a greater danger to the health of such individuals than no such notification. If the Secretary makes such a determination with respect to such individuals, the order shall require that the health professional who prescribe or use the device provide for the notification of the individuals whom the health professional treated with the device of the risk presented by the device and of any action which may be taken by or on behalf of such individuals to eliminate or reduce such risk. Before issuing an order under this subsection, the Secretary shall consult with the persons who are to give notice under the order.

The assumed source of the Secretary's knowledge would be the manufacturer, who must submit regular reports on the progress of the IOL investigation. 21 C.F.R. §§ 813.153, 813.155.

remedy defects in the lenses after analysis showed that the lens design was defective.

### III. Punitive Damages

 A claim for punitive damages is not a separate cause of action, but rather, is derivative upon an underlying cause of action. *See Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1024 (9th Cir.1985), *cert. denied*, 474 U.S. 1059, 106 S.Ct. 802, 88 L.Ed.2d 778 (1986); *Kirkbride v. Lisbon Contractors, Inc.*, 521 Pa. 97, 555 A.2d 800, 802 (Pa.1989) [8] (punitive damages only imposed where compensatory damages have been awarded). Since Plaintiffs' underlying negligence and strict liability claims are preempted by federal law, Plaintiffs' claim for punitive damages must too fail. Summary judgment will be entered on Plaintiffs' punitive damage claim.

### IV. Conclusion

 The regulations pertaining to the medical devices at issue serve three purposes: to encourage medical experimentation, to protect public health, and to ensure that interstate commerce is not unduly burdened. *See* S.Rep. No. 33, 94th Cong., 2d Sess. 1070, 1071 (1976).[9]; H.R.Rep. No. 853, 94th Cong., 2d Sess. 45 (1976). The regulations, by placing substantial authority in the FDA to regulate medical devices and grant investigational exemptions, attempt to balance and satisfy these sometimes diverging goals. Although preemption may unjustifiably permit Defendant to escape liability for an allegedly defective ocular product, preemption also encourages future experimentation so that fewer individuals will have to experience the emotional and physical agony of cataracts and other sight-diminishing diseases. This court sympathizes with the Plaintiffs who appear to have no recourse in the courts for their devastating injuries. Nonetheless, Congress has made clear its desire to preempt the types of state tort actions brought in the captioned suit. An appropriate order will be issued.

### ORDER AND JUDGMENT

In accordance with the accompanying memorandum, IT IS HEREBY ORDERED that Defendant's motion for summary judgment is GRANTED and judgment is entered in favor of Defendant and against Plaintiffs. The Clerk of Court is directed to close this case.

8. Note that analysis of a punitive damage claim is, like the underlying negligence and strict liability claims, based on state law. *See Woodson v. AMF Leisureland Centers, Inc.*, 842 F.2d 699, 702–03 (3d Cir.1988) (applying Pennsylvania law to punitive damages analysis). Two states—California and Pennsylvania—have interest in the captioned case, and neither state permits a punitive damage to go forward independent of an underlying claim.

9. This report states:

As medicine progresses, as research makes new breakthroughs, an increasing number of sophisticated, critically important medical devices are being developed and used in the United States. These devices hold the promise of improving the health and longevity of the American people. The committee wants to encourage their research and development. The committee also wants to be sure that the FDA has the proper authority to regulate that process so that Americans are not put at risk from the use of unsafe and ineffective medical devices.