**Robert SHEA, Plaintiff,**

v.

**OSCOR MEDICAL CORPORATION, Ventritex, Inc., a California Corporation, and Ventritex, Inc., a Delaware Corporation, Defendants.**

**No. 95 C 1219.**

United States District Court,
N.D. Illinois,
Eastern Division.

Dec. 18, 1996.

Donald A. Shapiro, Attorney at Law, Chicago, IL, for plaintiff, Robert Shea.

William J. Cremer, John P. Lynch, Jr., Edmund J. Siergert, Cremer, Kopon, Shaughnessy & Spina, Chicago, IL, for defendant Oscor Medical Corp.

## MEMORANDUM AND ORDER

MANNING, District Judge.

This matter comes before this court on motion of defendants, Oscor Medical Corporation (Oscor) and Ventritex, Inc. (Ventritex), for summary judgment, pursuant to Fed. R.Civ.P. 56 on plaintiff Robert Shea's state products liability claim. The gravamen of defendants' motion for summary judgment is their claim that plaintiff's state law claims are preempted by the Medical Device Amendments of 1976 (MDA), to the Federal Food, Drug, and Cosmetic Act, 21 U.S.C.A. § 360c–360*l*. As discussed in greater detail below, this court denies defendants' motion for summary judgment.

## BACKGROUND

On July 17, 1992, a cardiac defibrillator manufactured by defendant Ventritex, and equipped with a sensing lead manufactured by defendant Oscor, was implanted in plaintiff's chest. On February 1, 1993, plaintiff was notified that there was a malfunction of the pacing and sensing lead and that it had to be replaced in an additional surgery. On February 2, 1993, plaintiff underwent surgery to replace the pacing and sensing lead. Plaintiff subsequently brought the instant lawsuit against defendants, asserting that the cardiac defibrillator and its pacing and sensing were unreasonably dangerous under state law. After interim discovery, defendants filed the instant motion for summary judgment on the basis that plaintiff's state claims are preempted by the MDA.

Congress enacted the MDA "to provide for the safety and effectiveness of medical devices intended for human use." 90 Stat. 539; *Lohr v. Medtronic, Inc.,* —— U.S. ——, ——, 116 S.Ct. 2240, 2245, 135 L.Ed.2d 700 (1996). The MDA has given the United States Food and Drug Administration (FDA) comprehensive regulatory authority over medical devices. 21 U.S.C. § 360c–360*l*; *Medtronic,* —— U.S. at ——, 116 S.Ct. at 2246. Under the MDA, the FDA is authorized to classify medical devices intended for human use into

three categories based on the degree of regulation necessary to assure safety and effectiveness. 21 U.S.C. § 360c. Class I devices are subject to "general controls" on manufacturing processes because they pose little threat to health and safety. 21 U.S.C. § 360c(a)(1)(A). Class II devices are subject to "special controls" because they are potentially more harmful and general controls are insufficient to provide reasonable assurance of the safety and effectiveness of the device. 21 U.S.C. § 360c(a)(1)(B).

Class III devices are subject to the most stringent MDA controls. 21 U.S.C. § 360c(a)(1)(C). Such devices are considered to either "present a potential unreasonable risk of illness or injury," or are "purported or represented to be for use in supporting or sustaining human life or for a use which is of substantial importance in preventing impairment of human health." *Id.* Defendant Ventritex's cardiac defibrillator and defendant Oscor's pacing and sensing lead device are both Class III medical devices under the MDA.

Before a Class III medical device may be marketed, the manufacturer must first receive premarket approval (PMA) from the FDA. *Id.;* 21 U.S.C. § 360e(a). The PMA process requires manufacturers of a new Class III device to submit to the FDA detailed information about the device that demonstrates a "reasonable assurance" that the device is safe and effective. 21 U.S.C. § 360e(d)(2). As part of this process, a manufacturer must submit samples of the device, an outline of the device's components and properties, a description of the manufacturing process, safety data, and any other information that the FDA requests. 21 U.S.C. § 360e(c); *see also* 21 C.F.R. § 814.20. The manufacturer's application for PMA is given to a panel of experts for study and submission of a report and recommendation regarding approval. 21 U.S.C. § 360e(c)(2). The FDA, however, retains the right to withdraw its approval if it discovers that a device previously approved is unsafe or ineffective. 21 U.S.C. § 360e(e).

There are two important exceptions to the PMA process for Class III devices which are relevant to this case. First, the MDA allows the manufacturer of a Class III medical device to demonstrate to the FDA that the device is "substantially equivalent" to medical devices marketed before the MDA became effective in 1976. 21 U.S.C. § 360e(b)(1). Manufacturers who seek shelter from the PMA process under the "substantial equivalent" exception must submit to a limited form of administrative review known as "premarket notification" to the FDA (this procedure is also known as the "§ 510(k) process"), which allows the device to be marketed without further regulatory analysis if the FDA decides that it is "substantially equivalent" to a "preexisting device." 21 U.S.C. § 360e(b)(1). Devices found to be "substantially equivalent" are entitled to bypass the PMA process unless or until FDA issues a regulation specifying that the device undergo the review process. *See id.* On April 19, 1985, the FDA authorized defendant Oscor to market the sensing and pacing lead in this case as a "substantially equivalent" Class III medical device exempt from the PMA hurdle.

The second exception to the PMA process relevant to this case permits a Class III medical device that receives an "Investigational Device Exemption" (IDE) from the FDA to bypass the PMA process. 21 U.S.C. § 360j(g); 21 C.F.R. Pt. 813. IDEs, which the MDA authorizes the FDA to grant upon application, are intended to encourage innovation by exempting promising experimental devices from the usual requirement of establishing the safety and efficiency of a medical device before it can be sold. *Cf.* H.R.Rep. No. 853, 44th Cong., 2d Sess. 1, 12, and 42 (1976); *see also Slater v. Optical Radiation Corp.,* 961 F.2d 1330, 1331–32 (7th Cir.1992). The FDA will not grant an IDE unless it believes the device has sufficient likelihood of being proven safe and effective to justify the risk of being used on human beings. *See* 21 C.F.R. Pt. 813. On June 20, 1989, the FDA granted defendant Ventritex an IDE for its cardiac defibrillator. The cardiac defibrillator subsequently received premarket approval from the FDA on April 30, 1993.

## DISCUSSION

Summary judgment is appropriate when there is no "genuine issue as to any material

fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A movant is entitled to summary judgment under Rule 56 only when the pleadings, discovery materials, and moving papers in the record establish that there is no genuine issue of material fact and that the movant is entitled to summary judgment as a matter of law. See Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265, 273 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 211 (1986). Since neither party posits that there is any genuine issue as to any material fact in this case, the sole question is whether, based on the materials in the record, defendants are entitled to judgment as a matter of law.

■■■ In their motion, the defendants argue that they are entitled to summary judgment because plaintiff's strict liability claims are preempted by the MDA. The Supremacy Clause of Art. VI provides that "the Laws of the United States ... shall be the supreme Law of the Land ... any thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. Pursuant to this authority, Congress may preempt state law. *Kohl's Food Stores, Inc. v. Hyland,* 32 F.3d 1075, 1077 (7th Cir.1994). When considering a preemption question, there is an assumption that a federal law will not supersede the historic police powers of states unless the purpose or intent of Congress is clear and apparent. *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 516, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407, 422 (1992). Congressional purpose is the "ultimate touchstone" in every preemption case. *Medtronic,* — U.S. at —, 116 S.Ct. at 2250. Congress' intent may be explicitly stated in the language of the statute or implicitly contained in its structure and purpose. *Cipollone,* 505 U.S. at 516, 112 S.Ct. at 2617, 120 L.Ed.2d at 422. For the reasons that follow, this court finds that defendants have not established that plaintiff's strict liability claims are preempted by the MDA.

The MDA authorizes the FDA to promulgate implementing regulations, see 21 U.S.C. § 371(a), and forbids states from subjecting a medical device to "any requirement: (1) which is different from, or in addition to, any requirement applicable under [the MDA] to the device; and (2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter." 21 U.S.C. § 360k(a). Even though the phrase "any requirement" in § 360k is broad enough to preempt at least some common law causes of action, the Supreme Court's recent decision in *Medtronic* indicates that the scope of federal preemption under § 360k is ambiguous because the language employed by the statute "is not entirely clear." *Medtronic,* — U.S. at —, 116 S.Ct. at 2255. *Medtronic* concluded that the statutory language of § 360k(a) does not create a sweeping preemption because neither the language of the MDA nor its structure or purpose indicates that Congress intended to preempt all common law tort claims against manufacturers of defective Class III medical devices. *Medtronic,* — U.S. at ———, 116 S.Ct. at 2252-53.

### Plaintiff's action against defendant Oscor is not preempted by the MDA

■■■ Defendant Oscor argues that plaintiff's state law action against it is preempted by the MDA. In particular, defendant Oscor's position is that preemption under the MDA extends to Class III devices which the FDA determines are "substantially equivalent" to devices in the marketplace prior to the MDA's enactment.

Despite defendant Oscor's claim, this court concludes that *Medtronic* mandates a determination that plaintiff's state law claim against defendant Oscor is not preempted by the MDA. In *Medtronic,* the Court held that design defect claims under state strict products liability law are not preempted by the MDA despite FDA approval based on "substantial equivalency." *Medtronic,* — U.S. at —, 116 S.Ct. at 2255. The Court in *Medtronic* explained that the statutory scheme of the MDA suggests that the § 510k "substantial equivalency" exemption process was only intended to maintain the status quo relative to the marketing of existing medical

devices and their substantial equivalents. *Id.* The Court further indicated "[t]hat status quo included the possibility that the manufacturer of the device would have to defend itself against state law claims of negligent design." *Medtronic,* —— U.S. at ——, 116 S.Ct. at 2255. In view of *Medtronic,* defendant Oscor's claim that plaintiff's state law challenge to the pacing and sensing lead is preempted by the MDA is without merit.

### *Defendant Ventritex has not shown that plaintiff's state law claim is preempted*

 Defendant Ventritex argues that it is entitled to summary judgment because plaintiff's strict liability claim is based on requirements which differ from or add to the IDE requirements applicable to the cardiac defibrillator, and is therefore preempted. In this regard, defendant Ventritex asserts that allowing plaintiff's common law claim regarding the safety of a Class III device would invariably conflict with the requirements of the IDE approval process. Defendant contends that the *Medtronic* decision is inapplicable to its motion because plaintiff's challenge against its cardiac defibrillator involves the preemption of state law claims involving IDE.

Despite defendant Ventritex's position to the contrary, the *Medtronic* decision precludes summary judgment in their favor. Defendant Ventritex's attempt to distinguish *Medtronic* from the instant case is unconvincing. In addition to holding that state law defective design claims involving "substantial equivalency" devices are not preempted, the Court in *Medtronic* also held that state claims are not preempted to the extent that they assert that a defendant manufacturer failed to comply with common law duties "equal to, or substantially identical to" federal requirements. *Medtronic,* —— U.S. at ——, 116 S.Ct. at 2256. In this case, however, defendant Ventritex has not come forward with any materials establishing that plaintiff's state law claim regarding the cardiac defibrillator is based on state requirements that are sufficiently different from federal requirements under *Medtronic* so as

to preempt the claim. *Medtronic,* —— U.S. at ——, 116 S.Ct. at 2256.

### CONCLUSION

For the above stated reasons, defendants' motion to dismiss is denied.